## General Civil Case Filing Information Form (Non-Domestic)

**Court**
☑ Superior
☐ State

**County** CHEROKEE

**Docket #** 14CV2045 DC

**Date Filed** 10 15 2015
MM-DD-YYYY

**Plaintiff(s)**

BEIRNE ROBERT N JR
Last   First   Middle I. Suffix Prefix   Maiden

Last   First   Middle I. Suffix Prefix   Maiden

Last   First   Middle I. Suffix Prefix   Maiden

Last   First   Middle I. Suffix Prefix   Maiden

**Defendant(s)**

OCWEN LOAN SERVICING LLC
Last   First   Middle I. Suffix Prefix   Maiden

Last   First   Middle I. Suffix Prefix   Maiden

Last   First   Middle I. Suffix Prefix   Maiden

Last   First   Middle I. Suffix Prefix   Maiden

**No. of Plaintiffs** 1

**No. of Defendants** 1

**Plaintiff/Petitioner's Attorney**   ☑ Pro Se

Last      First        Middle I.   Suffix

**Bar #**

---

### Check Primary Type (Check only ONE)

☐ Contract/Account

☐ Wills/Estate

☑ Real Property  AND

☐ Dispossessory/Distress

☒ Personal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgment Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☐ Tort (If tort, fill in right column)

☐ Other General Civil Specify

---

### If Tort is Case Type:
#### (Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☐ Other Specify

**Are Punitive Damages Pleaded?** ☐ Yes  ☐ No

---

**EXHIBIT**

**A**

Blumberg No. 5208

ORIGINAL

## IN THE SUPERIOR COURT OF CHEROKEE COUNTY
## STATE OF GEORGIA

Robert N. Beirne Jr.,

Sui Juris in Propria Persona

Plaintiff

v.

OCWEN LOAN SERVICING,

Defendant

CIVIL ACTION
FILE NO: 14CV2045 DC

JURY TRIAL DEMANDED

## VERIFIED COMPLAINT

COMES NOW Plaintiff Robert N. Beirne Jr., and files this Verified

Complaint against Defendant OCWEN LOAN SERVICING, and shows unto this

Court as follows:

FILED IN OFFICE
CLERK OF SUPERIOR COURT
CHEROKEE COUNTY, GA.
2014 OCT 15 AM 11: 31
PATTY BAKER, CLERK

## PARTIES, JURISDICTION AND VENUE

1.  Plaintiff is an individual, a natural person, over the age of eighteen years and resident of CHEROKEE County, Georgia.

2.  Defendant is a limited liability company organized under the laws of the United States, and they will be served through their Registered Agent on file at Georgia Secretary of State's Office:  Registered Agent:  Corporation Service Company, located at 40 Technology Parkway, South, Norcross, GA  30092, GWINNETT County, Georgia. The subject real property of this action (the "Home" or "Property"), located at 1511 Rocky Creek Drive, Woodstock, GA 30188.

3.  Jurisdiction is proper in this Court. [1]

4.  Venue is proper in this Court.

## RIGHT TO THE AMEND THE ACTION

5.    The Plaintiff expressly reserves the right to supplement/addendum, amend or withdraw this Complaint at any time to correct service, join other Defendants, and/or Plaintiffs and to add more issues of FACT, and/or add

---

[1] SUBJECT MATTER JURISDICTION refers to the competency of the court to hear and determine a particular category of cases. Federal district courts have "limited" jurisdiction in that they have only such jurisdiction as is explicitly conferred by federal statutes. 28 U.S.C. §1330 [see also 40 U.S.C.S. §255] et seq. See LIMITED [SPECIAL] JURISDICTION. Many state trial courts have "general" jurisdiction to hear almost all matters. The parties to a lawsuit may not waive a requirement of subject matter jurisdiction.

addendums/exhibits and/or plead additional damages to the Complaint.

## FACTS

6.   On June 29, 2000, Plaintiff made a Promissory Note (the "Note") for principal amount of $134,100.00, to MERITAGE MORTGAGE CORP ("MMC") as payee as evidence for a residential purchase money mortgage loan (the "Loan").

7.   Concurrently therewith, and in connection with the Note, Plaintiff gave to Mortgage Electronic Registration System, Inc. ("MERS"), which conveyed a security interest on Plaintiff's Home.   See EXHIBIT "1" ¶1 "MERS massive criminal conspiracy"

8.   MMC, or its successor in interest, then attempted to securitize the Loan in a real estate mortgage investment conduit trust, or REMIC trust, [The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A., as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2006-RP4] by conveying its ownership interest to a third party owner of the Loan ("True Creditor"). See EXHIBIT "1" ¶7 "unsecured debt"

9.  On a date uncertain, Defendant began servicing the Loan pursuant to a certain Pooling and Servicing Agreement (the "PSA") with the True Creditor. See EXHIBIT "1" ¶7 "rarely transferred in a timely manner"

10.  Simultaneously, Defendant presented itself to Plaintiff as the owner of the Loan, the Noteholder, and began directing to Plaintiff, inter alia, monthly mortgage statements ("Monthly Statements"), and notices of default ("Notices of Default). [2]  See EXHIBIT "1" ¶6 "servicers squeeze fees"

11.  On or about April 10, 2011, The Bank of New York Mellon and Defendant, along with other financial institutions, was served a cease and desist order by numerous federal regulators, including the Board of Governors of the Federal Reserve System, Office of the Comptroller of the Currency, Office of Thrift Supervision, and the Federal Deposit Insurance

---

[2] Virtually all 62 million securitized notes define the "Noteholder" as "anyone who takes this Note by transfer **and who is entitled to receive payment under this Note...**" Very few of the holders of securitized mortgages can establish that they both hold (have physical possession of) the note AND are entitled to receive payments on the notes. For whatever reason, if the Defendant has possession of the original note, it is usually endorsed payable to the order of some other (often bankrupt) entity. http://butlerlibertylaw.com/foreclosure-fraud/

Corporation. [3] http://www.justice.gov/crt/about/hce/whatnew.php

12. On April 13, 2011, Defendant, along with numerous other large financial institutions, entered into a consent decree ("Consent Decree") to reform their lending, servicing and foreclosure practices and pay settlements for improper practices in foreclosures instituted in 2009 and 2010.

13. Throughout this time period, Defendant engaged in the so-called practice of "dual track foreclosure", where foreclosure is pursued while simultaneously negotiating with the borrower for the purpose of creating a false sense of security to the borrower and inducing the borrower to delay or postpone preparing a proper foreclosure defense.

---

[3] In the CONSENT ORDERS and settlements most of the prior foreclosures were wrongful and it would be wrongful to proceed with any further foreclosures without correcting or curing the problems caused by wrongful foreclosure on unenforceable notes and mortgages that are NOT owned by the originator of the alleged loan or any successor thereto. The further problem for them is that none of them were ever a creditor in the loan transaction.

There can be little doubt now that the principal intermediary was the investment bank that received deposits from investors under false pretenses. There is no indication that the deposits from investors were ever credited to any trust or special purpose vehicle. Therefore there can be no doubt that the alleged trust could have ever entered into a transaction in which it paid for the ownership of a debt, note or mortgage. It's obvious that they are owed nothing from borrowers through that false paper chain and that there obviously could be no default with respect to the alleged trust or any of its predecessors or successors. Therefore the mortgage bonds supposedly issued by the trust were empty with respect to any mortgages that supposedly backed the bonds.

14. This practice of "dual track foreclosure" was in strict violation of the Consent Decree. [4]

15. In October of 2014, Defendant sent to Plaintiff a notice of nonjudicial foreclosure sale ("Notice of Foreclosure") with the sale under power set to occur on the First Tuesday in November 2014.

16. In connection with Defendant foreclosure attempt, Defendant invited modification application by Plaintiff.

17. Plaintiff properly submitted modification application pursuant to Defendant's own internal procedures on multiple occasions.

18. Defendant engaged in "dual track foreclosure" by failing to process, or engaging in delay tactics in processing, Plaintiff's modification application.

19. Defendant summarily and arbitrarily denied all of Plaintiff's modification applications. See EXHIBIT "1" ¶6 "difficult to modify"

20. On December 8, 2013, Plaintiff sent to Defendant a request for disclosure, rescission, and validation of debt under the federal Truth In Lending Act ("TILA") and a "qualified written request" under the federal

---

[4] Dual tracking occurs when a mortgage servicer continues to foreclose on a homeowner's home while simultaneously considering the homeowner's application for a loan modification. In the past, dual tracking was common. However, rules issued by the Consumer Financial Protection Bureau (CFPB) as well as various state laws and the National Mortgage Settlement (NMS) offer protection to homeowners in this situation. The CFPB rules, which became effective January 10, 2014, strictly limit the ability of mortgage servicers to foreclose on a borrower while also negotiating a loan modification. Some states have already enacted similar restrictions and the NMS has limits as well, although it only covers certain lenders.

Real Estate Settlement Procedures Act ("RESPA") (collectively, the "QWR").

21. To date, Defendant have not responded to the QWR.

22. To date, Defendant have failed to comply with its legal obligations under TILA and RESPA in responding to the QWR.

23. Throughout the course of servicing the Loan and scheduling two foreclosure sale dates, Defendant charged and collected from Plaintiff inappropriate servicing fees and charges that never actually accrued ("False Servicer Fees"). [5]   See EXHIBIT "1" ¶6 "servicers squeeze fees"

It is very difficult to make a payment (and make the exact payment) when the amount keeps changing. When a payment is delayed in being matched up to an account, more fees and interest are always accruing. If the amount needed to reinstate your loan is short, the funds will be rejected and sent back to the homeowner.

---

[5] Your loan gets transferred or sold from the lender or some sort of "trustee" or a previous servicer. In addition, somehow there's also some other 'attorney in fact' company or trustee involved. The actual paperwork they would provide to the court if you were to sue them would say something like "<homeowner> executed a Note and a Deed of Trust for the benefit of <original lender>. The Note and Deed were assigned to <some company you've never heard of> as Trustee. <Current servicer> is the current servicer and attorney in fact for <Trustee>." There's an old magic trick where someone puts a ball under one of three cups and then moves the cups around. This is the legal equivalent of that. The goal is to keep you from knowing who the hell to sue. It's also to set everything up where none of the companies has to take responsibility. It's also to keep you from getting away from them. Once your loan is obtained by the servicer, you only have three ways to get away from them: just plain let them foreclose on your house, refinance (and pay all the $5,000 or $10,000 refinancing fees), or sue them. There's no other way out. While you "belong" to them during their servicing, they can charge you whatever fees they feel like and you're in no position to argue.

24. Defendant continues to hold itself out as the holder of the note and the security deed and the servicer of the Loan. [6]

## COUNT I - ILLEGAL COVERSION

25.    Defendant's conduct is an attempt to illegally convert the subject property to their own property, if they are permitted to pursue claims that they have failed to verify, based upon the Original Promissory Note, they will have defrauded Plaintiff with non-judicial foreclosure without proof of the true Promissory Notes existence. [7] [8]

26.    Defendant have proceeded scheduling a non-judicial foreclosure scheduled on November 4, 2014 without obtaining the Original Promissory Note, verifying the existence of said Note and without verifying the Lender has

---

[6] "To show standing, then, in a foreclosure action, the defendant must show that it is the holder of the note and the mortgage at the time the complaint was filed. The foreclosure defendant must also show, at the time the foreclosure action is filed, that the holder of the note and mortgage is harmed, usually by not having received payments on the note." UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO WESTERN DIVISION AT DAYTON IN RE FORECLOSURE CASES CASE NO. 3:07CV043 07CV049 07CV085  07CV138  07CV237  07CV240  07CV246  07CV248  07CV257 07CV286 07CV304 07CV312 07CV317 07CV343 07CV353 07CV360 07CV386 07CV389 07CV390 07CV433 JUDGE THOMAS M. ROSE (November 15th, 2007)

[7] When the Bank is asked to produce the ORIGINAL CONTRACT NOTE/PROMISSORY NOTE/LOAN AGREEMENT they have difficulty in so doing. Why? Well, 99% of the time the debt has been bundled up and sold on and on and on in the sub-prime and descending levels of banking debauchery. No one really knows where the notes are. In many foreclosure instances the foreclosure documents are ROBO-SIGNED by clerks and people who have no idea what they are signing and HAVE NOT VERIFIED THE STATE OF THE CONTRACT. In addition once the primary lender (the only one who can enforce it and is party to the original contract by the way!) has written off the loan and passed it to the collection agency or secondary party he has "received his pound of flesh" and the loan amount should be written off as either the government bailout covers the loss or the tax breaks cover the loss as a "write off."

[8] Without possession of the Original Note, there is no legal/lawful basis for a party or its agent to substantiate the claim of a perfected security in interest in the subject property. Ref. Marix v. Dean, GA Court of App No. A07A1095.

a right to foreclose. [9]

27.    OCWEN LOAN SERVICING lacks standing and does not own the mortgage loan. [10]

28.    Further, <u>without finding the true party who retains the Note, and the holder in due course, Defendant have failed to prove 'status' as it relates to the owner of the Promissory Note and the 'HOLDER' of the Note;</u> (a) To prove status of holder of the instrument (UCC §3-4189(d); or (b) To prove status of non-holder in possession of the instrument who has the rights of a holder (UCC §3-301(ii)); or (c) To prove status of being entitled to enforce the instrument as a person not in possession for the instrument pursuant to (UCC §3-309) or (UCC §3-4189(d)).

---

[9] A fast-growing body of case law is arising out of the mortgage crisis. It holds that mortgagors have standing to assert claims in court to ensure that they only pay the right parties. See, e.g., Naranjo v. SBMC Mortgage (S.D. Cal. July 24, 2012) 2012 WL 3030370 (borrower alleging her loan was not validly assigned to trust may seek restitution of sums paid to defendants and declaration that defendants may not enforce note and trust deed); Javaheri, supra; Ohlendorf, supra; Kemp v. Countrywide Home Loans, Inc. (Bk. D. N.J. 2010) 440 B.R. 624, 629-630, 634) (bank bought note and mortgage as trustee under pooling and servicing agreement but never possessed the note; neither bank nor its servicer allowed to enforce the note); Deutsche Bank National Trust Co. v. Ramotar (N.Y. Sup. 2011) 2011 WL 66041 (allegations of robo-signing and other concerns about bank's standing were sufficient to raise triable issues of fact precluding summary judgment in favor of bank suing to foreclose on Ramotar home); Bayview Loan Servicing, LLC v. Nelson (Ill. Ct. App. 2008) 382 Ill.App.3d 1184, 1188 (summary judgment in favor of foreclosing entity where there was no evidence it ever obtained any legal interest in the subject property); U.S. Bank National Assn. v. Ibanez (Sup.Ct. Mass. 2011) 458 Mass. 637, 649-650 ("Ibanez") (banks which submitted self-contradictory securitization documents undermining their claims to have received assignments of mortgages could not foreclose).

[10] "A party lacks standing to invoke the jurisdiction of a court unless he has, in an individual or a representative capacity, some real interest in the subject matter of an action." Wells Fargo Bank, v. Byrd, 178 Ohio App.3d 285, 2008-Ohio-4603, 897 N.E.2d 722 (2008). It went on to hold, "If plaintiff has offered no evidence that it owned the note and mortgage when the complaint was filed, it would not be entitled to judgment as a matter of law." Wells Fargo, Litton Loan v. Farmer, 867 N.Y.S.2d 21 (2008). "Wells Fargo does not own the mortgage loan… Therefore, the… matter is dismissed with prejudice."

29.    OCWEN LOAN SERVICING is not the Plaintiff's creditor or the

Authorized Servicer. [11]   Also see EXHIBIT "1" ¶9 "unsecured debt"

OCWEN LOAN SERVICING is NOT the creditor; they cannot show proof of

loss, proof of payment or any financial transaction that would entitle them to

enforce an invalid note or foreclose on an invalid, unperfected mortgage lien.

30.    Defendant threatens to or is procuring an act in violation of the rights of

the Plaintiff respecting the subject property and the Plaintiff's rights.

31.    Defendant is NOT now (and NOT in the previous thirteen attempts of

foreclosure) the holder of any instrument, note, and mortgage or otherwise, that

would give them the authority to engage in or continue the illegally scheduled

sale. [12]

---

[11] To prove standing, the defendant must usually show, through admissible evidence, that it holds the
note and mortgage or is acting as the note holder's authorized representative. Several recent appellate
decisions have dismissed foreclosures, reversed summary judgments, and even imposed sanctions against
lenders and their counsel for failing to prove standing.
[12] **(MDC-NYSE) Denver Headquarters of Organized Crime. Illegal Mortgage Backed Securities
$100 Trillion, Bank Bailouts, Derivatives $5,000 Trillion and the theft of 12 million American's
Homes through illegal foreclosures.**
The evidence of criminal violations in foreclosure cases is overwhelming. The only one who seems to
being his job is the Kentucky Attorney General. The evidence, including records from federal and state
courts and local Clerks' offices around the country, shows widespread forgery, perjury, Obstruction of
Justice and illegal foreclosures on the homes of over 12.5 million American's.
Servicers perform routine mortgage maintenance tasks, including filing foreclosures, on behalf of
mortgage owners, groups of investors who bought mortgage-backed securities. MERS Corp, also known
as Mortgage Electronic Registration Systems Inc., also known as MERS, runs a vast computerized
registry of mortgages. Little known before the mortgage crisis hit, MERS, which stands for Mortgage
Electronic Registration Systems, has been at the center of complaints about false or erroneous mortgage
documents. MERS was created in 1993 by Larry Mizel to cover his back on Illegal Mortgage Frauds
dating back to 1977.
http://www.veteranstoday.com/2014/06/15/worldwide-financial-criminal-network-revealed-part1/

32.     There is no adequate remedy at law or compensation would not be sufficient.

33.     If the scheduled sale is allowed to happen, this will cause Plaintiff great and irreparable injury in that real property is unique, and Defendant have acquired the Security Deed under questionable lending practices and predatory acts. [13]

34.     The Plaintiff has suffered, will continue to suffer irreparable harm if the sale is allowed to happen that he will be able to claim RELIEF on. [14]     See EXHIBIT "1" ¶2 "theft of one's house"

35.     It is likely that the Plaintiff will prevail on the merits of this Complaint, once the foreclosure sale is stayed.

---

[13] "Too often trouble began as soon as a loan transferred to Ocwen," said CFPB Director Cordray. The complaint, filed in federal district court in D.C., alleges that Ocwen charged borrowers more than stipulated in the mortgage contract; forced homeowners to buy unnecessary insurance policies; charged borrowers unauthorized fees; lied in response to borrower complaints about excessive and unauthorized fees; lied about loan modification services when borrowers requested them; misplaced documents and ignored loan modification applications, causing homeowners to slip into foreclosure; illegally denied eligible borrowers a loan modification, then lied about the reasons why—the list goes on.
These violations are exactly what Ocwen did to homeowners. As a result, homeowners who found themselves in trouble could not get an effective shot at saving their home, were improperly shuffled through the foreclosure process with false documents, and were stolen from up and down the line. Ocwen's conduct affected an estimated 185,000 borrowers who faced foreclosure from 2009 to 2012, as well as millions more still hanging on in their homes. http://www.newrepublic.com/article/116010/ocwen-mortgage-fraud-settlement-servicer-fined-homeowner-abuse

[14] A claim is plausible where the Plaintiff alleges factual content that "allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct and fraud alleged." Id. The plausibility standard requires that the Plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that will support the Plaintiff's claim against the Defendant. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)

36.    The Defendant will not suffer harm, loss or injury.

37.    The Plaintiff is entitled to the adequate remedy and relief demanded at this time to prevent irreparable damage and harm to Plaintiff.

38.    Pecuniary compensation would not afford adequate relief; it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.

### COUNT II - ATTEMPTED WRONGFUL FORECLOSURE I (TORT)

39.  Plaintiff incorporates all preceding paragraphs herein.

40.  The attempt to securitize the Loan was never perfected, and consequently, neither the beneficial interest in or right to service the Loan passed to Defendant. [15]  See EXHIBIT "1" ¶7 "MBS not backed by mortgages"

41.  Defendant owes a duty of reasonable care to Plaintiff to strictly comply with Georgia statutes pertaining to nonjudicial foreclosure.

---

[15] If you have record title to a mortgage but cannot show that you have possession of and/or entitlement to enforce the promissory notes that the mortgage secures, you lose.  This is true for 62 million securitized loans.  More and more courts are agreeing that the banks "inside" the PSA do not have legal standing (they have no skin in the game and so cannot show the necessary "injury in fact"), are not "real parties in interest" (they cannot show that they followed the terms of the PSA or are otherwise "entitled to enforce" the note) and that there are real questions of whether any securitized mortgage can ever be properly perfected. More and more courts are recognizing that, without proof of ownership of the underlying note, holding a mortgage means nothing. http://butlerlibertylaw.com/foreclosure-fraud/

42. Defendant breached that duty by attempting to foreclose without holding a beneficial interest in the Note or Security Deed. [16]

43. Such breach caused damages to Plaintiff in the form of pecuniary loss and mental anguish.

44. GMAC MORTGAGE previously scheduled a non-judicial foreclosure wrongfully and unlawfully of the described property of the Plaintiff without obtaining the Original Promissory Note and verifying the existence of said Note and without proving standing. GMAC MORTGAGE unlawfully scheduled the sale without proving standing in November 2012.

45. And now the Defendant has unlawfully scheduled the sale again without proving standing for November 2014. The question to ask is why did they not go through with the scheduled sale? Answer? Because the sale was post-poned because they were wrongfully and unlawfully scheduled and for the purpose of augmenting the administrative and legal fees.

---

[16] Only the documented lender/holder of the note can foreclose on said property. OCGA-44-14-162-2 requires that the current holder of the mortgage loan record the assignment of the security deed, which shows the present owner of the mortgage loan, in the public record of the clerk of superior court of the county in which the real property is located before conducting the foreclosure sale. The designated entity authorized to negotiate and modify is NOT noted. This is in violation of OCGA § 44-14-162.2.  Both the National and Georgia Uniform Commercial Code in 11-201(2) provide aggrieved parties are entitled to resort to a remedy. The Georgia Code in 11-1-201 (34) "'Remedy' means any remedial right to which an aggrieved party is entitled with or without resort to a tribunal."

46.    Since on or about June 2012 and continuing to the present Defendant and GMAC have wrongfully and unlawfully sought to foreclosure on the described property of the Plaintiff without success!

47.    THIS IS BECAUSE Defendant in bad faith is manipulating the debt by scheduling and canceling a nonjudicial foreclosure for the purpose of augmenting the administrative and legal fees. Defendant's bad faith now prevents Plaintiff from knowing the true principal balance on the [Loan] and further prevents Plaintiff from obtaining a refinancing or proper payoff. Accordingly, judicial intervention is needed to determine the true [Loan] balance.

## COUNT III - ATTEMPTED WRONGFUL FORECLOSURE II

## (STATUTORY COMPLIANCE)

48.  Plaintiff incorporates all preceding paragraphs herein.

49.  Defendant does not possess the ability to negotiate and/or modify the terms of the Loan due to the limitations set forth in the PSA.

50. Defendant owed a duty to Plaintiff to strictly comply with Georgia statutes pertaining to nonjudicial foreclosure. [17]

51. Defendant breached that duty by attempting to foreclose but failing to notify Plaintiff of the entity with full authority to negotiate or modify the terms of the Loan.

52. Such breach caused damages to Plaintiff in the form of pecuniary loss and mental anguish.

## COUNT IV- DECLARATORY JUDGMENT (CREDIT DEFAULT SWAP)

53. Plaintiff incorporates all preceding paragraphs herein.

54. The Loan was insured by a credit default swap agreement (the "CDSA"), which resulted in payout of the Loan's outstanding balance upon Plaintiff's default. [18]

55. The relationship between Plaintiff and their lender is a contractual relationship, governed by the Note and Security Deed.

---

[17] A "holder is defined as a person who is in possession of a document of title or an instrument..." O.C.G.A. 11-1-201(20). A holder takes an instrument for value "to the extent that the agreed considerations have been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process..." O.C.G.A. 11-3-303(a). Pursuant to O.C.G.A. 11-3-302. A holder must also take the instrument in good faith. O.C.G.A. 11-3-302(1)(b). Good faith is defined as "honesty in fact in the conduct or transaction concerned." O.C.G.A. 11-1-201(19). To constitute bad faith, a purchaser must have acquired the instrument "with actual knowledge of its infirmity or with a belief based on the facts or circumstances as know to the purchaser that there was a defense or the purchaser must have acted dishonestly." Citizens & Southern Nat'l Bank v. Johnson, 214 Ga. 229, 231, 104 S.E.2d 123, 126 (1958).
[18] A credit default swap is a type of contract that offers a guarantee against the non-payment of a loan. In this agreement, the seller of the swap will pay the buyer in the case of a credit event (default) by a third-party. If no default occurs, the seller of the swap will have collected a premium from the buyer.

56. The true owner of the Loan was made whole by the CDSA, and consequently, suffered no loss or harm by Plaintiff's purported default. [19]

57. The Security Deed contains provision for certain self-help remedies upon borrowers' default(s), including nonjudicial foreclosure (the "Waiver of Borrower's Rights").

58. Further, the Waiver of Borrower's Rights is void as against public policy and unenforceable at law because it provides for a self-help remedy in the absence of loss or harm to grantee and/or its assignee(s).

59. Plaintiff is entitled to, and hereby demands, declaratory judgment that Defendant is not entitled to the self-help remedy of nonjudicial foreclosure.

## COUNT V - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

60. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

61. Defendant was subject to a non-waivable covenant of good faith and fair dealing owed to Plaintiff under the Note and Security Deed.

---

[19] The Treasury continues to pay AIG claims 100-cents on the dollar on mortgage defaults (loans). Owners of the loans (banks) who bought CDS insurance have been made whole for any loss resulting from non-payment. But homeowners are still obligated to pay their mortgages (in arrears) even though these non-payments have effectively been paid for, month-after-month, by US taxpayers. So, the banks stand to earn double – should defaulting homeowners become current with their debt and if they don't, they can foreclose and effectively make a windfall. Every dollar the taxpayer paid to keep mortgages current should reduce the obligation. If the taxpayer was there to help, the help should go to the distressed homeowner not the banker who has mitigated his risk. http://www.economicshelp.org/blog/933/finance/credit-default-swaps-explained/

62. Defendant breached this covenant by engaging in dual track foreclosure and charging the False Servicer Fees.

63.   Moreover, delayed notice to the Plaintiff to inform him that the mortgage was purchased by the Defendant helps escalate the late payments past the 80 "standard procedure" late day freeze. Defendant does not care if Plaintiff makes his payments.  They seem more interested in calculating that 80-day period and locking your account, than trying to help you get caught up.

64. Such breach(es) caused damages to Plaintiff in the form of pecuniary loss and mental anguish.

## COUNT VI - UNFAIR AND/OR DECEPTIVE BUSINESS PRACTICES

65. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

66. Defendant engaged in unfair and/or deceptive business practices under the Georgia Fair Business Practices Act of 1975 by engaging in dual track foreclosure and charging the False Servicer Fees.

67. Such breach(es) caused damages to Plaintiff in the form of pecuniary loss and mental anguish.

## COUNT VII - FRAUD AND/OR ATTEMPTED FRAUD*

68.  Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

69.  Defendant misrepresented the true balance of the Loan and their true status as servicer and/or true creditor of the Loan, with knowledge or reckless disregard of the statements' falsity, in each of the Monthly Statements, Notices of Default, Payoff Letter and Notice(s) of Foreclosure. This is FRAUD. [20]

70.  Plaintiff relied on such representations by continuing to deal with Defendant as their lender, including directing their Loan payments and modification application(s).  See EXHIBIT "1" ¶4 "fraud, intentional and massive"

   * For more clarification and true facts about Foreclosure Fraud please go to the following link and read the article "Foreclosure Fraud in a Nutshell" by Butler Liberty Lawfirm. http://butlerlibertylaw.com/foreclosure-fraud/

71.  Such breach(es) caused damages to Plaintiff in the form of pecuniary loss and mental anguish.

## COUNT VIII- RESPA VIOLATIONS

72.  Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

---

[20]   37 Am Jur 2d at section 8 states, in part: "Fraud vitiates every transaction and all contracts. Indeed, the principle is often stated, in broad and sweeping language, that fraud destroys the validity of everything into which it enters, and that it vitiates the most solemn contracts, documents, and even judgments."

73.  Defendant violated RESPA by engaging in dual track foreclosure and
charging the False Servicer Fees. [21]

74.  Such breach(es) caused damages to Plaintiff in the form of pecuniary
loss and mental anguish.

## COUNT IX  - UNJUST ENRICHMENT

75.  Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

76.  Defendant's collection of the False Servicer Fees constitutes unjust
enrichment.

77.  Plaintiff is entitled to, and hereby demands, restitution for same.

## COUNT X - ADEQUATE ASSURANCES OF PERFORMANCE

78.  Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

79.  The Note and/or Security Deed is governed by and subject to Georgia's
uniform commercial code.

---

[21] Section 6 of the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2605 (e), sec. 2601 and §
2609. This demand is binding upon every principal and agent re subject matter set forth. Per the FDCPA,
as codified at 15 USC § 1692, the debt collector [servicer] is mandated to cease and desist all collection
activity and stop any foreclosure proceedings until verification and validation of the ORIGINAL NOTE is
provided to the homeowner. Plaintiff sent the Defendant QWR and FDCPA letters, so they have nowhere
to hide. In this action the motion becomes a petition to enforce the RESPA 6 inquiry and the FDCPA
inquiry either through direct order or through discovery.

80. Defendant's conduct and omissions resulted in Plaintiff's reasonable insecurity as to Defendant's performance as to, inter alia, its proper administration of the Loan and its legal ability to cancel the Security Deed upon completion of performance under the Note.

81. Plaintiff requested adequate assurances in the QWR.

82. Plaintiff were and are entitled to suspend performance until given adequate assurances of performance by Defendant.

83. To date, Defendant have failed to provide such adequate assurances.


## COUNT XI – UNCONSCIONABILITY

84. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

85. Defendant's acts and omissions constitute unconscionable conduct and the terms of the Loan constitute unconscionable terms of a contract.


## COUNT X11 - REASONABLE ATTORNEYS' FEES AND EXPENSES

86. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

87. Defendant's acts and omissions were in bad faith, have been stubbornly litigious, or have caused Plaintiff unnecessary trouble and expense that entitle Plaintiff to recovery of reasonable attorneys' fees and litigation expenses pursuant to O.C.G.A. § 13-6-11.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of twelve on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in favor of Plaintiff and against Defendant for:

a)  Prelitigation discovery ordering Defendant to disclose and turn over any and all <u>servicing agreements, master servicing agreements, loss-share agreements, pooling agreements,</u> and any other collateral source identifying Defendant's receipt of remuneration in servicing Plaintiff's loan.

b)  Prelitigation discovery ordering Defendant to disclose and turn over any and all <u>servicing agreements, master servicing agreements, loss-share agreements, pooling agreements, and any other instruments establishing any and all interest of third-parties in Plaintiff's loan.</u>

c)  Accounting of all charges on, against or towards the loan, including all credits, debits, and set offs.

d)  Declaratory judgment that Defendant is NOT entitled to the self-help remedy of nonjudicial foreclosure of the Property;

e) Injunctive relief permanently enjoining Defendant from foreclosing or otherwise dispossessing Plaintiff of the Property or further collection activity until Defendant discloses and shows cause establishing the true and accurate balance on Plaintiff's loan account;

f) Compensatory damages for recovery and reimbursement of damages in an amount to be determined by the enlightened conscience of the jury, as to be further determined by Defendant's prelitigation discovery disclosures;

g) Recovery of reasonable attorneys' fees and litigation expenses incurred by Plaintiff in connection with this action; and

h)  Any and all further relief as this Court may deem just and appropriate.


Respectfully submitted, this 13th Day of October 2014.


By: _____

Robert N. Beirne Jr., Pro Se
1511 Rocky Creek Drive
Woodstock, GA 30188
678-468-8300

## VERIFICATION

STATE OF GEORGIA                     )

                                    ss

COUNTY OF CHEROKEE            )

I, Robert N. Beirne Jr. , proceeding in Sui Juris in Propria Persona and under penalty of perjury
state the following: I am over the age of 21 and competent to testify in all matters concerning
the foregoing Complaint; I have prepared and read the foregoing Complaint, the pleadings and
defenses set forth herein, which comes from my first-hand knowledge, information and belief,
formed after reasonable enquiry, believes that they are well grounded in fact and warranted by
existing law or a good faith argument for the extension, modification or reversal of existing law,
and that they are not interposed for any improper purpose such as or needlessly increase the cost
of litigation. All of the statements are true and correct.  Everything I have stated is true to the
best of my knowledge and belief.

_____

                               Robert N. Beirne Jr., Pro Se
                               1511 Rocky Creek Drive
                               Woodstock, GA 30188

Sworn to and Subscribed Before Me

This ___15___ day of October, 2014

*Michele Vondra*   10/15/14

NOTARY PUBLIC, State of Georgia

# EXHIBIT "1"

## Time to Audit the REMIC Trusts

By L. Randall Wray

1. When we peel back the layers of the real estate "onion" what we find is layer after layer of fraud. From the mortgage brokers to the appraisers and lenders, from the securitizers to the ratings agencies and accountants, from the trustees to the servicers, and from MERS (Mortgage Electronic Registry System) through to the foreclosures, what we find is a massive criminal conspiracy—probably the worst in human history.

2. There can be little doubt that a home is important to maintenance of a middle class living standard today for most Americans. There is almost no calamity worse than loss of one's home. It is the main asset that most Americans hold—essential to the educational success of one's children, and to a comfortable retirement of our citizens. Americans typically borrow against their home equity to put their kids through college, to ease the financial distress caused by unexpected health care expenses, and to finance other large expenditures. The accumulated equity in the home is the only significant source of wealth for the vast majority of Americans. The home is necessary to one's continuing connection to the neighborhood, school district, and network of friends. Theft of one's house today is certainly equivalent to theft of a horse 150 years ago.

3. And, yet, we are not hanging the thieves who are stealing millions of homes from Americans. The thievery today is orders of magnitude greater than the horse thievery of the distant past. Today's foreclosure thieves have stolen more property of citizens than all previous thieves combined since the founding of our nation. The only thing that could trump it would be the theft of property and livelihood from our Native Americans. To be sure, we have evolved as a nation, and I would not advocate hanging those responsible. But without question they ought to be incarcerated in prison, with long terms and with confiscatory monetary penalties—perhaps 10

years for anyone who helps to improperly foreclose on a homeowner's property, and $10 million for each case of fraudulent foreclosure. That would provide the proper incentive as well as the proper monetary reward that will be required to get good lawyers to take cases of homeowners who are being illegally thrown out of their homes every minute of every day.

4. The real estate finance sector is trying to pin the blame on some sloppy paperwork and overburdened workers. They promise to put things right, hiring more workers to work diligently to dot those eyes and cross those tees. In reality it was all fraud, intentional and massive. Home theft was the business model. That is what the Bush administration meant when it pushed the "ownership society"—a society in which the top tenth of one percent would own everything.

5. First, they changed bankruptcy laws so that a first mortgage on one's principal residence is the only debt a judge cannot reduce. This was to ensure that when the wave of foreclosures began, those who lost their homes to the true ownership class would still have to pay off the mortgage.
6. Next, they created "affordability" products—such as the neutron bomb hybrid adjustable rate mortgages hawked by Chairman Greenspan—that were designed to blow up the borrowers while leaving the real estate intact. Then they created derivatives—the so-called mortgage backed securities—sold to investors. Toxic waste derivatives were then re-packaged into even more trashy collateralized debt obligations that were sold to bank customers, with banks buying credit default swap "insurance" to place bets against their own customers.

7. The banks then farmed out mortgage servicing to their own subsidiaries, "misplacing" payments that ought to have gone to the securities holders. This was in order to claim borrowers were delinquent so that the servicers could squeeze late fees and default fees and extra interest out of them. Investors in the securities would be last in line, with the servicers maximizing their own incomes and protecting the interests of their mother banks (which often had second liens on the properties in the form of home equity loans). This is why the servicers make it so difficult to modify the loans—which is in the interests of the borrowers and the investors, but against the interest of the banks with second liens. And they created MERS to operate as a foreclosure steam roller, which outsourced the foreclosures back to the servicers with deputized "vice presidents" pretending to be officers of MERS in order to scam the courts.

8. We now know that the "mortgage backed" securities were not backed by mortgages. In reality they are unsecured debt. The "pooling and servicing agreements" (PSAs) that govern securitization require that the mortgage documents (including the wet ink notes as well as a clean chain of title) are transferred in a timely manner to the trustees. This was rarely and perhaps never done, because it was counter to the recommendation made by MERS (Mortgage Electronic Registry System). Instead, notes were either destroyed or held by the servicers to speed the foreclosures that were always envisioned as the end result of the mortgage origination process. Not only does this practice render the securities fraudulent but it also violates the federal tax laws that govern the REMICs—meaning back taxes are due.

9. But worse than all that, by breaking the chain of title and by destruction of documents, MERS and the servicers have jeopardized the entire system of property rights. Most, perhaps all, foreclosures have been fraudulent, which means that re-sales of the homes are also frauds. It goes without saying that the original mortgages were frauds from the very beginning— to complete the transformation to the ownership society it was necessary to ensure that by construction, default was inevitable. Either the homeowner would be unable to pay, or the servicer would "lose" the payments. By obscuring the chain of title, it would be impossible for the debtors or the courts to sort things out. Separating home owners from their property was

necessary to ensure that we can create Bush's ownership society. It is the modern form of the feudal foreclosures and seizures of peasant lands that concentrated ownership in the hands of agricultural capitalists—creating the first ownership society.

10. The scale of the problem is huge. Some estimate that as many as $6.4 trillion worth of home mortgages (33 million of them) are frauds, with destroyed or doctored documents. Probably all of the $1.4 trillion worth of private label residential mortgage "backed" securities violate the PSAs—so are actually unsecured debt. Three state supreme courts have already ruled that MERS cannot be the owner of mortgages, hence, has no standing in foreclosures. MERS contaminated 65 million mortgages—decoupling the mortgages from the notes and destroying the chain of title. A consortium of investors (including PIMCO, Black Rock, and Fannie and Freddie) that owns $600 billion of the private label securities are suing the banks to take them back. One investor action alone against Bank of America concerns $47 billion in fraudulent mortgages—enough to put a serious dent in its purported net worth of $230 billion (which is probably a vast overstatement resulting from cooking the books). A suit in California seeks $60-$120 billion in lost recording fees alone. All 50 states are investigating the servicers for fraud. The top five servicers (Bank of America, Wells Fargo, JPMorgan Chase, Citigroup, GMAC-Ally) have 60% of the business and include the top four banks that account for 40% of the banking business.

11. It is time to push the reset button. All foreclosures should be stopped immediately. The REMIC trustees should be audited to see if they have properly followed the requirements of the PSAs and laws applying to REMICs. If they do not have the notes, the securities should be put back to the banks. If the banks cannot absorb the losses, they must be closed and resolved. The FDIC in turn will end up with the mortgage backed securities and underlying mortgages. Working with Freddie and Fannie, all of these should be modified, into new fixed rate mortgages—with a "clawback" to reset principle to current market value of the homes, and with new notes. Investors are going to take losses so there will be fall-out that government will have to address. There will be hundreds of billions of dollars of losses. Congress must find a way to mitigate effects on the economy as well as on investors in MBSs and other assets related to real estate. This is a big problem, but it is not insurmountable.

12. Every top management official of all the biggest dozen banks, plus everyone at MERS, all officers of every servicer, rater, appraiser, accounting firm, and mortgage broker ought to be investigated for fraud. In the aftermath of the thrift crisis, 1852 bank insiders were prosecuted and 1072 were jailed. So far in this much bigger crisis there have been only 50 criminal probes and 80 civil lawsuits authorized by FDIC. It is time to get serious about the home thieves.

http://www.benzinga.com/life/politics/10/12/729908/time-to-audit-the-remic-trusts#ixzz39FgJrNDE

SUMMONS

## IN THE SUPERIOR COURT OF CHEROKEE COUNTY
### STATE OF GEORGIA

ROBERT N BEIRNE JR
1511 ROCKY CREEK DR
WOODSTOCK GA 30188

CIVIL ACTION
NUMBER _KKN2045DC_

PLAINTIFF

VS.

OCWEN LOAN SERVICING LLC

DEFENDANT

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

an answer to the complaint which is herewith served upon you. **WITHIN 30 DAYS AFTER SERVICE OF THIS SUMMONS UPON YOU,** exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 15 day of October, 20 14.

Patty Baker, Clerk of Superior Court
Cherokee County Justice Center
90 North Street, Suite G170
Canton, GA 30114

BY _____
Deputy Clerk

*INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.*

JSG-0007

SCAN0172.JPG

11/17/2014

Record ID **53690**

Civil Action No. _14 CV 2045_

Date Filed _Oct 15  2014_

678 468 8300 cell

Attorney's Address

Robert N Beirne Jr
1511 Rocky Creek Dr
Woodstock GA 30188

Name and Address of party to be served.

Corporation Service Company
40 Technology Pkwy South
Norcross GA  30092

Magistrate Court  ☐
Superior Court  ☑
State Court  ☐
Georgia, Gwinnett County

Robert N Beirne Jr
_____ Plaintiff

VS.

Ocwen loan Servicing
_____ Defendant

_____ Garnishee

## Sheriff's Entry Of Service

**Personal** ☐ — I have this day served the defendant _____ personally with a copy of the within action and summons.

**Notorious** ☐ — I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches; domiciled at the residence of defendant.

**Corporation** ☑ — Served the defendant _Ocwen loan Service_ a corporation by leaving a copy of the within action and summons with _Alisha Smith_ in charge of the office and place of doing business of said Corporation in this County.

**Tack & Mail** ☐ — I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**Non Est** ☐ — Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This _16_ day of _Oct_, 20_14_.

_____ Deputy

Sheriff Docket_____  Page_____

Gwinnett County, Georgia

WHITE: Clerk        CANARY: Plaintiff / Attorney        PINK: Defendant

SC-2 Rev.3.13

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Summons and Complaint has been furnished by the Gwinnett County Sherriff's office to **OCWEN LOAN SERVICING LLC** Registered Agent, **Corporation Service Company** located at **40 Technology Pkwy S #300, Norcross, GA   30092, Gwinnett County, Georgia**. A copy of the complaint and summons was also mailed to **OCWEN LOAN SERVICING LLC** at the following addresses: **1661 Worthington Road, Suite 100, West Palm Beach, FL   33409** via certified mail.

Case Number #14-CV-2045

This ___17th___ day of November  2014

By: _____


Robert N. Beirne Jr., Pro Se
1511 Rocky Creek Drive
Woodstock, GA 30188
678-468-8300

The State of Georgia, County of Cherokee
signed before me this 17 day of Nov. 2014
By michele Vondra
Type of Identification License
Michele Vondra
Notary Public State of Georgia

PATTY BAKER, CLERK
2014 NOV 17 PM 3:31
FILED IN OFFICE
CLERK OF SUPERIOR COURT
CLERK OF STATE COURT
CHEROKEE COUNTY GA